34 So.2d 499

### GUY et al. v. LANCASTER.

### 6 Div. 602.

Supreme Court of Alabama.

Feb. 26, 1948.

288

John A. Altman, of Carrollton, for appellants.

Patton & Patton, of Carrollton, for appellee.

SIMPSON, Justice.

The plaintiffs have appealed from an adverse judgment in a stautory action of ejectment where they sued for the recovery of a specifically described strip of land along the north side of the SE¼ of the NE ¼ of Section 8, Township 21, Range 13 West, Pickens County, Alabama.

This disputed area was between the SE¼ of the NE¼ owned by the plaintiffs and the NE¼ of the NE¼ owned by the defendant and the real question was a determination of the true boundary line between these two forties, the plaintiffs claiming the strip as a part of the forty acres embraced in their deed.

There was no disclaimer as authorized by § 942, Title 7, Code 1940. The defense relied on was adverse possession of the disputed area by the defendant for more than ten years and the plea was in effect one of not guilty, though there were several special pleas setting up elements of adverse possession. Demurrers were overruled to these several pleas, but as the Chief Justice pointed out in the opinion in the kindred case of Guy v. Lancaster, Ala.Sup., 34 So. 2d 10, 12. "We find no occasion, under the issues here framed, to inquire into the accuracy of these pleas as the matter therein set forth was available to defendant under his plea of not guilty. Title 7, § 941, Code 1940; Bynum v. Gold, 106 Ala. 427, 17 So. 667; Metropolitan Life Ins. Co. v. Estes, 228 Ala. 582, 155 So. 79."

On the evidence, it appears that the defendant's father, J. C. Lancaster, at one time owned both of the above-mentioned forty acres and the forty acres (SW¼ of NE¼) immediately west of the plaintiffs' property. In 1930 J. C. Lancaster conveyed to his son Harvey Lancaster, the

defendant here, the north forty (NE¼ of NE¼) and in 1931 to another son, Leland Lancaster, the SE¼ of the NE¼, now owned by the plaintiffs. These conveyances were gifts by the father to the sons, though the deed to Harvey recited a cash consideration of $500 and the one to Leland a cash consideration of $200. Harvey still owns his land, but Leland, in 1941, for a recited consideration conveyed his forty acres more or less to N. Pate, who in 1943 conveyed it to J. A. Guy, and in 1945 Guy conveyed to his minor children, the real parties in interest here who have sued by their father, as next friend. After the purchase by Guy of this forty, he had two surveys made in order to establish his west boundary line between himself and J. C. Lancaster and the north boundary line between his land and that of the defendant, Harvey. According to these surveys J. C. Lancaster's possession in plaintiffs' forty aggregated about three and four-tenths acres and Harvey's possession in the same forty covered the area sued for in the instant suit. The plaintiffs accordingly instituted separate statutory ejectment suits against J. C. Lancaster for the disputed acreage on his west side and against Harvey for the strip on the north side described in this suit. Verdicts and judgments were rendered in each case for the respective defendants and the above-cited case of Guy v. Lancaster is the result of the appeal in the suit against J. C. Lancaster.

We should note here that a reversal was ordered in the last-mentioned case because of erroneous rulings of the court in regard to the exclusion of evidence, but the record under review here is not infected with the same error and we perceive no erroreous rulings, in regard to any evidence, which would warrant a reversal of the cause.

■■ The correctness of the two surveys, the exact location of the disputed boundary line between the two forties and the right, vel non, to recover, was, under the evidence, a matter for the jury's determination (Guy v. Lancaster, supra) and as the jury's verdict on the issues presented was not manifestly wrong and unjust, but was well sustained, we must affirm the jury's conclusion on these facts. Wayne Pump

Co. v. Harrison, 247 Ala. 186, 23 So.2d 392; Sorrell v. Lindsey, 247 Ala. 630, 25 So.2d 725; Cobb v. Malone & Collins, 92 Ala. 630, 9 So. 738.

■■ The theory of the defense in the case, as it was in the J. C. Lancaster case, is that, upon deeding the north forty (NE¼ of NE¼) to his son Harvey and the south forty (SE¼ of NE¼) to his son Leland, J. C. Lancaster pointed out to his two sons the dividing line of the two forties; that the sons agreed upon the line so pointed out as the true division line between the properties; that the said line was a well-defined road and a fence which separated the two properties and was thereafter abided by and recognize between the respective parties as the true division line and that the defendant Harvey has held the disputed strip of land up to this agreed line under claim of ownership with all elements of adverse possession for a peroid of more than ten years. This defense is well recognized in the authorities. When parties agree upon the location of a line fence and abide by such a division line and one holds actual, peaceable, and exclusive possession of the property within the boundary, his possession is adverse and if continued for ten years ripens into title. Guy v. Lancaster, supra; Brantley v. Helton, 224 Ala. 93, 139 So. 283; Duke v. Wimberly, 245 Ala. 639, 18 So.2d 554; Alford v. Rodgers, 242 Ala. 370, 6 So.2d 409.

■ Whether possession to a given location is adverse is a question of intention and if the possessor considers and claims land as his own his possession is hostile though he does not suppose he is claiming more than he owns and claims by mistake of fact. It is not necessary for one to know that he is claiming the property of another when he is in the actual possession of it to make such possession adverse to the true owner. If he is in the actual possession with the intention of holding it and claiming it as his own, such possession is adverse. Duke v. Wimberly, supra; Branyon v. Kirk, 238 Ala. 321, 191 So. 345, 348.

The other Lancaster case, citing Smith v. Cook, 220 Ala. 338, 124 So. 898, also took note of the same principle, where it was observed:

"If, * * * a coterminous land owner holds actual possession of the disputed strip under claim of right openly and exclusively for a continuous period of ten years, believing that he is holding to the true line, he acquires title to that line. Even though the belief as to the correct location originated in a mistake, and it is immaterial what he might or might not have claimed had he known he was mistaken.

"But there is a limitation to this principle to the effect if the occupancy to a line is with no intention to claim to it if it should be beyond the true location of the boundary, such possession is not adverse.

"When, however, one of the coterminous proprietors erects a fence as the dividing line and occupies and claims to it as such, with knowledge of such claim by the other, the claim of the former is presumptively hostile and the possession adverse."

■ Other pertinent principles of law were discussed in this same case which we deem unnecessary to repeat here, except to point out the principle was emphasized that boundary lines may be agreed upon between coterminous landowners and that it is permissible to prove the facts and circumstances of such agreement and the character of the possession of the respective coterminous owners and their successors in title with reference to the agreed boundary line. This principle condemns many of the assignments of error which challenged the propriety of the introduction of such evidence, as the testimony of the Lancasters as to the pointing out and designation of the agreed line.

■ There were eighty assignments of error, not one of which is specifically argued with supporting authorities, as is required by Practice Rule, 10, Supreme Court, Code 1940, Tit. 7. Appendix. In order, though, to accord the rule liberal application (Brothers v. Brothers, 208 Ala. 258, 94 So. 175; Propst v. Brown, Ala.Sup., 34 So.2d 497.[1]) we have given consideration to the various matters argued in the brief submitted by appellant and have concluded that none warrant a reversal of the case.

The first nineteen assignments charge error in the overruling of the plaintiffs' demurrers to the special pleas of the defendant and as indicated above, there was no prejudicial error in such rulings since the substance of the pleas was available under the general issue. Guy v. Lancaster, supra, and authorities cited.

■ Assignments of error 20-35, inclusive, assert error in refusing certain special written charges requested by the plaintiffs. Without dealing specifically with each of these charges, since the appellants' brief and argument has not so dealt with them, the assignments are disposed of by noting that the charges were either argumentative, abstract, invasive of the province of the jury, otherwise incorrect statements of the applicable law, or were covered in the court's oral charge. They were, therefore, refused without error.

■ Assignment 72, 77, 78, 79 charge error in certain portions of the oral charge of the court to which no exceptions were reserved and, of course, are unsustainable.

■ Assignments 73, 74, 75, and 76 claim error in the overruling of the plaintiffs' motion for new trial because the verdict was against the weight of the evidence, and as hereinabove noted such assignments of error are not well taken.

The remaining assignments of error were with reference to admission and exclusion of certain evidence. The court has given these assignments earnest consideration and has concluded that there was no substantial prejudice to the plaintiffs in such rulings as would warrant a reversal of the judgment.

No prejudicial error appearing, the judgment is affirmed.

Affirmed.

GARDNER, C. J., and BROWN and LIVINGSTON, JJ., concur.

---

[1] Ante, p. 279.